UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARQUIS TERRELL-LAMAR EVANS,

        Petitioner,                      Case No.: 1:23-cv-10303
                                                  Hon. Thomas L. Ludington
v.                                            United States District Judge

JAMES CORRIGAN,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

On March 12, 2020, Petitioner Marquis Evans was convicted by a jury in Monroe County, Michigan, of multiple offenses, including second-degree murder, assault with intent to do great bodily harm less than murder, unlawful possession of a firearm by a felon, three counts of possession of a firearm during the commission of a felony, and being a fourth-felony habitual offender under Michigan law. On February 6, 2023, Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254(d). He contends that the evidence presented at his trial was insufficient to rebut his claim of self-defense and that the trial court relied on facts not found by the jury in determining his sentence. For the reasons explained below, the Petition will be denied.

**I.**

The following facts from the Michigan Court of Appeals are presumed correct on habeas review, *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant[] [Marquis Evans]'s convictions arise from the shooting of victims, Meagin Robison and Gregory James, following a disagreement over a drug transaction. Robison was shot in the forearm and survived. James was shot in the neck and died from the wound.

For a three month period, Robison purchased crack cocaine and sometimes marijuana from defendant. At times, she made five purchases of cocaine in a day. She lived within two blocks of defendant, and the transactions would occur at various locations. Robison described her relationship with defendant as amicable. Although she had seen defendant with a firearm, she did not fear him. In fact, if defendant came to her home to conduct a drug transaction, she would prepare a meal for defendant to take with him. If Robison believed that defendant "shorted" her during a drug sale, he would make up for any loss.

Specifically, on January 22, 2019, Robison and James purchased crack cocaine from defendant for $40. The purchase occurred at defendant's home, and defendant angrily lectured Robison about the manner James parked his truck because it called attention to the home. Upon returning home and believing they did not get their money's worth, Robison and James attempted to contact defendant with telephone calls and text messages. Defendant responded by text message that they should not come back to his house because it would not be in their best interest, and they would end up on "the news." Nevertheless, Robison and James left their house and walked to defendant's home. Before leaving, James inserted a baseball bat into the sleeve of his jacket. However, Robison testified that the baseball bat was not visible and James took the bat because the neighborhood was not safe. They chose not to drive to defendant's home because of his prior complaint about the manner in which they parked their vehicle.

When they arrived at defendant's house, Robison and James continued to try and contact defendant by telephone and text messages. When the victims saw defendant's back door crack open, they walked up the sidewalk toward his porch. Robison claimed the pair walked calmly toward defendant's door. She testified that they never reached the area of defendant's porch. However, defendant opened the door, threw a cooking pot at James, and began firing his weapon. Robison was shot in the left arm. James fell on his back and was bleeding from his neck. Robison tried to apply aid to James and call 911. Defendant went back into his home.

On the contrary, defendant testified that he acted in self-defense. Specifically, defendant denied that he shorted the victims of any drugs. He claimed that drug addicts immediately view their purchase and that the victims effectively wanted a bigger "high." When he was approached by the victims, Robison yelled at defendant, but defendant kept his voice low to avoid attracting attention. To end the confrontation, he threw a pot at the victims. Because this act did not dissuade them, he fired a shot from his gun at the ground, but James continued to advance. Defendant claimed that he saw James pull an object out of his coat and, fearing for his life, began shooting. After the shots were fired, defendant fled the scene and was arrested approximately eight days later. Defendant was able to evade the police because he sought the assistance of friends and customers and used their cellphones to avoid being tracked by the police.

Despite defendant's testimony and claim of self-defense, the jury convicted defendant of second-degree murder, AWIGBH [assault with intent to do great

bodily harm], felony-firearm, and felon-in-possession. As relevant here, the trial court sentenced defendant to 60 to 90 years' imprisonment for the second-degree murder conviction and 12 to 40 years' imprisonment for the AWIGBH conviction.

*People v. Evans*, No. 353746, 2021 WL 5405786, at *1–2 (Mich. Ct. App. Nov. 18, 2021).

Petitioner appealed his conviction and sentence to the Michigan Court of Appeals. *See id.* There, he argued that there was insufficient evidence to convict him because the state "could not prove beyond a reasonable doubt he did not act in self-defense." *Id.* at *2. Petitioner also contended "that the trial court's sentences were unreasonable and an abuse of discretion." *Id.*

On November 18, 2021, the Michigan Court of Appeals rejected these arguments and affirmed Petitioner's convictions and sentences. *Id.* at *1. Petitioner then applied for leave to appeal to the Michigan Supreme Court. *See People v. Evans*, 973 N.W.2d 157 (Mich. 2022). On May 3, 2022, the Michigan Supreme Court denied his application. *Id.*

On February 6, 2023, Petitioner filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254(d). ECF No. 1. The Petition raises the following two claims:

> I. WHETHER THE INSUFFICIENT EVIDENCE PRESENTED DURING THE DEFENDANT'S TRIAL, TO PROVE BEYOND A REASONABLE DOUBT, THAT HE DID NOT ACT IN SELF-DEFENSE, CONSTITUTES THE DENIAL OF THE DUE PROCESS OF LAW GUARANTEED BY THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION?
>
> II. WHETHER [THE] MICHIGAN COURT OF APPEAL[S] IS IN ERROR FOR AFFIRMING PETITIONER'S CONVICTION AND SENTENCE WHEN THE TRIAL COURT EXERCISED JUDICIAL FACT-FINDING DURING SENTENCING?

*Id.* at PageID.13.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) constrains federal courts' review of state-court decisions in habeas cases. *See Smith v. Nagy*, 962 F.3d 192, 198 (6th Cir. 2020). Indeed, if a state court has already adjudicated a claim on the merits, a federal court

may grant relief only if the state court's decision: (1) ran contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) rested on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have "independent meaning." *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). A state-court decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court law; or (2) confronts a set of facts "materially indistinguishable" from a decision of the Supreme Court and yet arrives at a different result. *Id.* at 405–06. A state-court decision involves an "unreasonable application" of clearly established federal law if it (1) correctly identifies the governing legal rule but unreasonably applies it to the facts of the instant case, or (2) either unreasonably extends an established legal principle to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Id.* at 407.

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410. And later Supreme Court decisions have interpreted this directive to mean that an unreasonable application "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation modified). AEDPA "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). But the state court's error must be "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. At bottom, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands

that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.* And for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

### A.

Turning to his claims, Petitioner first argues that the evidence at trial was insufficient to disprove his claim of self-defense. ECF No. 1 at PageID.16–26. But that contention misses the mark.

Petitioner's claim is not a cognizable habeas claim. Under Michigan law, self-defense is an affirmative defense—it concedes the elements of the offense but seeks to excuse or justify its commission. *People v. Dupree*, 788 N.W.2d 399, 405, n.11 (Mich. 2010). But "proof of the nonexistence of an affirmative defense has never been required" by due process. *See Smith v. United States*, 568 U.S. 106, 110 (2013) (citation modified). That is, the Constitution does not compel the state to disprove self-defense beyond a reasonable doubt. *See Martin v. Ohio*, 480 U.S. 228, 233–36 (1987); *Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988). And, as a result, habeas review of evidentiary sufficiency is limited to whether the state proved the elements of the crime as defined by state law—it does not extend to affirmative defenses. *See Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999). Thus, Petitioner's first claim falls outside the scope of habeas review.

**B.**

Next, Petitioner argues that the state trial court judge violated his rights under the Sixth Amendment by relying on facts not submitted to the jury, proved beyond a reasonable doubt, or admitted by him, in determining his sentence.[1] *See* ECF No. 1 at PageID.27–30. Petitioner points to the judge's comments at sentencing that he considered Petitioner to be a drug dealer who was a danger to the community. *E.g.*, *id.* at PageID.27. This claim also misses the mark.

On June 17, 2013, the Supreme Court held that any fact increasing a mandatory minimum sentence constitutes an element of the offense and must be proven to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 103 (2013). In so doing, the Supreme Court extended the reasoning of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). Those cases established that any fact increasing a sentence beyond the statutory maximum must be submitted to the jury. *Alleyne* rejected the contrary rule of *Harris v. United States*, 536 U.S. 545 (2002), which had permitted judicial fact-finding regarding mandatory minimums. At the same time, *Alleyne* made clear that its holding did not extend to every fact bearing on a judge's exercise of sentencing discretion. 570 U.S. at 116.

The Michigan Supreme Court relied on *Alleyne* in concluding that Michigan's mandatory sentencing guidelines violated the Sixth Amendment. *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015). Because the guidelines required judges to find facts that increased the mandatory minimum sentence, they fell within *Alleyne*'s rule. To remedy the constitutional violation, the

---

[1] Respondent notes that the claim is unexhausted because Petitioner did not present his sentencing issue to the Michigan Court of Appeals, raising it for the first time before the Michigan Supreme Court. *See* ECF No. 9 at PageID.80–82. **Error! Main Document Only.**But exhaustion is not a jurisdictional bar to review, and where, as here, an unexhausted claim is meritless, the court may proceed to the merits. *Granberry v. Greer*, 481 U.S. 129, 131, 134–35 (1987).

Michigan Supreme Court struck the mandatory component of the guidelines and, consistent with *Booker*, made them advisory. *Id.* at 520–21. The Sixth Circuit has since granted habeas relief in a case arising under the pre-*Lockridge* mandatory scheme, reasoning that Michigan's guidelines violated *Alleyne* by using judge-found facts to increase mandatory minimums. *Robinson v. Woods*, 901 F.3d 710, 716–18 (6th Cir. 2018).

This case is different. For starters, Petitioner was sentenced on May 21, 2020, ECF No. 10-19, well after *Lockridge*, at a time when Michigan courts were required to treat the guidelines as advisory. A sentence imposed under a purely advisory system does not implicate the Sixth Amendment. *See Booker*, 543 U.S. at 233 (observing that a system in which the guidelines "recommend, rather than require" particular sentences poses no constitutional problem); *see also Apprendi*, 530 U.S. at 481–82; *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006). After *Lockridge*, sentencing in Michigan represents an exercise of judicial discretion guided, but not constrained, by the advisory guidelines. *Fitzgerald v. Trierweiler*, No. 1:17-CV-435, 2017 WL 2790710, at *7 (W.D. Mich. June 28, 2017). And facts found by the sentencing judge in exercising that discretion do not trigger Sixth Amendment concerns. *Id.*

Moreover, Petitioner's sentences were within the statutory maximum of the various convictions.[2] A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797

---

[2] Under Michigan law, second-degree murder carries a maximum penalty of life imprisonment. MICH. COMP. LAWS § 750.317. Assault with intent to do great bodily harm ordinarily carries a maximum of ten years of imprisonment, *id.* § 750.84, while possession of a firearm by a felon carries a maximum of five years, *id.* § 750.224f. But because Petitioner was also convicted as a fourth-felony habitual offender, the statutory maximums for the latter two offenses were increased to life imprisonment. *Id.* § 769.12(1)(b). In addition, Michigan's felony-firearm statute imposes a mandatory two-year prison term to run consecutively to any other sentence. *Id.* § 750.227b.

(E.D. Mich. 1999). Thus, Petitioner is not entitled to habeas relief on his second claim. As a result, Petitioner is not entitled to habeas relief on either claim, so his Petition, ECF No. 1, will be denied.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

Here, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Thus, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that Petitioner Marquis Evans's Petition for a Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes this case.**

Dated: October 14, 2025            s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge